J. Robert Forshey
State Bar No. 07264200
Jeff P. Prostok
State Bar No. 16352500
Suzanne K. Rosen
State Bar No. 00798518
FORSHEY & PROSTOK, LLP
777 Main Street, Suite 1290
Fort Worth, TX  76102
Telephone:  (817) 877-8855
Facsimile:   (817) 877-4151
Attorneys for MC Asset Recovery, LLC

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | Chapter 11 Case |
| MIRANT CORPORATION, et al., | ) | Case No. 03-46590 (DML) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| MC Asset Recovery, LLC, as successor | ) | Adversary No. 05-04142 |
| in interest to and as representative of | ) | |
| Mirant Corp., *et al.* | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | District Court Case No. 4:06-CV-013-A |
| | ) | |
| COMMERZBANK AG, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF MC ASSET RECOVERY, LLC'S BRIEF IN SUPPORT OF ITS (i) MOTION FOR LEAVE TO FILE SUPPLEMENT TO *PLAINTIFF'S BRIEF IN SUPPORT OF OBJECTIONS TO PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW* AND *PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANTS' OBJECTIONS TO PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW* BASED ON FACTS OCCURRING AFTER BRIEFING DEADLINE, (ii) REQUEST FOR JUDICIAL NOTICE, AND (iii) MOTION TO SUPPLEMENT RECORD**

## **TABLE OF CONTENTS**

Table of Contents ........................................................................................................ i

Table of Authorities.....................................................................................................ii

I.   Motion for Leave to File Supplement to Briefs ........................................... 1

     A.   Procedural History of Adversary Proceeding ................................. 1

     B.   Procedural History Related to Bankruptcy Case and Mirant Distributions ....... 2

     C.   The Timing of the Southern Settlement and the Distribution of Stock
          after the Briefing Deadline Necessitates the Filing of a Supplement to
          Plaintiff's Briefs........................................................................ 6

     D.   Good Cause Exists Justifying the Filing of the Attached Amendment and
          Supplement ................................................................................ 8

II.  Request for Judicial Notice ...................................................................... 11

III. Motion to Supplement Record................................................................... 12

Prayer for Relief........................................................................................... 12

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Bridgewater v. Northrup Grumman Ship Sys.*, 2007 U.S. Dist. LEXIS 87926
(S.D. Miss. Nov. 29, 2007) ...................................................................................... 11

*Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594 (5th Cir. 1981) ............................... 8

*Flores v. GMAC Mortg.*, 2010 U.S. Dist. LEXIS 20623 (E.D. Cal. Feb. 10, 2010) ........... 10-11

*FMC Corp. v. Boesky*, 727 F. Supp. 1182 (N.D. Ill. 1989) ................................................... 11

*Govt. of Canal Zone v. Burjan*, 596 F.2d 690 (5th Cir. 1979) ............................................. 10

*Hausberg v. CompUSA,* 1995 U.S. Dist. LEXIS 20333 (N.D. Tex. Oct. 30, 1995) ............... 11

*In re Ivan Boesky Sec. Litig.,* 36 F.3d 255 (2d Cir. 1994) .................................................... 11

*Jacobsen v. Osborne*, 133 F.3d 315 (5th Cir. 1998) ......................................................... 8, 9

*Lowry v. Texas A&M University System,* 117 F.3d 242 (5th Cir. 1997) ................................. 8

**Federal Rules**

Fed. R. Evid. 201(b) ............................................................................................................ 11

Fed. R. Evid. 201(b)(2) ........................................................................................................ 11

Fed. R. Evid. 201(f) ......................................................................................................... 10, 11

Fed. R. Bankr. P. 9033 ......................................................................................................... 8

Fed. R. Bank. P. 9033(b) ...................................................................................................... 8

Fed. R. Bankr. P. 9033(d) ..................................................................................................... 8

Fed. R. Bankr. P. 9019 ..................................................................................................... 4, 11

COMES NOW MC Asset Recovery, LLC ("MCAR" or "Plaintiff") and files this Brief in Support of its (i) Motion for Leave to file a Supplement (the "Supplement") to Plaintiff's *Brief in Support of Objections to Proposed Findings of Fact and Conclusions of Law with respect to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint* (the "Primary Brief") (Bankruptcy Docket No. 279) and *Plaintiff's Brief in Response to Defendants' Objections to Proposed Findings of Fact and Conclusions of Law* (the "Response Brief") (Bankruptcy Docket No. 300) based on Facts Occurring After Briefing Deadline,[1] (ii) Request for Judicial Notice, and (iii) Motion to Supplement Record.

**I.**
**MOTION FOR LEAVE TO FILE SUPPLEMENT TO BRIEFS**

***A.   Procedural History of Adversary Proceeding***

1.      In the adversary proceeding below, Defendants Commerzbank AG, *et.al* (collectively "Defendants") filed a motion to dismiss [Adversary Docket No. 125] asserting, among other things, that MCAR lacked standing to pursue the instant fraudulent transfer claims because all of Mirant's creditors had been paid in full based on a distribution of Mirant stock on the effective date of Mirant's bankruptcy plan and, consequently, there was no injury capable of being redressed as a result of MCAR's claims.[2]

2.      On April 22, 2010, the bankruptcy court entered its Proposed Findings of Fact and Conclusions of Law with respect to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (the "Proposed Findings") [Adversary Docket No. 263; District Ct. Docket No. 46].   Among Judge Nelms' proposed conclusions were conclusions that the record did not clearly demonstrate that creditors had been paid in full and that, because Mirant's bankruptcy plan permitted the allowance of claims after the effective date, it was

---

[1] A copy of the short supplement sought to be filed by MCAR is located in MCAR's Appendix at pages 1-34, which includes the 4 page proposed Supplement (App. pp. 1-5) and its attachments (App. pp. 6-34).

[2] See Adv. Docket No. 125, pp. 21 -24.

possible that creditors receiving a distribution of Mirant stock after the effective date of Mirant's plan would not receive full payment on their claims based solely on the distribution of Mirant stock.[3]

3.       The parties filed their respective objections to the bankruptcy court's Proposed Findings on May 27, 2010.[4]  The parties thereafter filed their respective responses to the other side's objections on July 1, 2010.[5]  The bankruptcy court transmitted the Proposed Findings and the record from the bankruptcy court to this court on July 20, 2010.[6]

4.       As discussed below, following the transmittal of the Proposed Findings, the parties' briefing pertaining to same, and the record to this Court, a creditor in Mirant's bankruptcy case received a substantial allowed claim against Mirant and a subsequent distribution of Mirant stock and a small amount of cash on account of its allowed claim. Because Mirant's stock was trading at only $10.04 on the date of the distribution, such creditor received a total distribution worth less than half of the amount of its allowed claim.

5.       In its briefs, MCAR specifically addressed the fact that a large outstanding claim against Mirant existed as of the time of the filing of its objections to the Proposed Findings. Because this claim was subsequently allowed, and the creditor recently received stock and cash worth less than half of the value of its allowed claim, MCAR now seeks to file the attached Supplement to reflect the fact that a large claim has recently been allowed against Mirant and that the creditor received stock and cash worth less than half of the amount of its allowed claim.

**B.    *Procedural History Related to Bankruptcy Case and Mirant Distributions***

6.       On July 14, 2003 and various dates thereafter (collectively, the "Petition Date"), MC 2005 LLC (f/k/a Mirant Corporation prior to January 3, 2006 and MC 2005

---

[3] See Proposed Findings, pp. 17-18.

[4] See Adv. Docket No. 278-279 (Plaintiff's Objections) and Adv. Docket No. 281 (Defendants' Objections).

[5] See Adv. Docket No. 300 (Plaintiff's Response) and Adv. Docket No. 302 (Defendants' Response).

Corporation prior to February 23, 2007) ("Old Mirant") and certain of its affiliated entities (collectively, the "Debtors"), filed voluntary chapter 11 petitions (the "Bankruptcy Cases").

7.       Pursuant to an order dated December 9, 2005 (the "Confirmation Order") [Bankruptcy Case, Docket No. 12569], the bankruptcy court confirmed the *Amended and Restated Second Amended Joint Chapter 11 Plan of Reorganization for Mirant Corporation and Its Affiliated Debtors dated December 9, 2005* (attached as Exhibit 1 to the Confirmation Order, the "Plan") with respect to Old Mirant and certain of its affiliated debtors other than Mirant Bowline, LLC, Mirant Lovett, LLC, Mirant NY-Gen, LLC, Mirant New York, Inc., and Hudson Valley Gas Company (collectively, the "New York Debtors").[7]

8.       The effective date of the Plan was January 3, 2006 (the "Effective Date").

9.       Southern and Southern Company Services, Inc. ("SCS") filed numerous proofs of claim in the Bankruptcy Cases (as such claims have been amended from time to time, the "Proofs of Claim") asserting claims against Old Mirant and the other Debtors.[8] Among these Proofs of Claim was claim no. 8285 filed by Southern against Old Mirant in the amount of $48,983,611.79.[9]

10.      On July 7, 2010, Mirant, Southern, and SCS entered into a settlement agreement (the "Settlement Agreement") which settled and resolved substantially all disputes and claims between the Debtors, on the one hand, and Southern and SCS, on the other.[10]  The Settlement Agreement encompasses, among numerous others, claim no. 8285 filed by Southern against Old Mirant.[11]

---

[6] See Adv. Docket Nos. 304-305; see also, District Court Docket Nos. 45-46.

[7] Plans of reorganization were subsequently confirmed and became effective with respect to the New York Debtors.

[8] Southern and SCS filed approximately 339 proofs of claim in an aggregate amount of over $80 million, excluding duplicate claims, against Old Mirant and the other Debtors.  See App. pp. 7, 24-34 (¶6 of Affidavit of Jay Wilson and Settlement Agreement attached thereto).

[9] See App. p. 7 (Wilson Affidavit, ¶ 6).

[10] See App. p. 8 (Wilson Affidavit, ¶ 7 and n.3); see also Appendix pp. 11-34 (Settlement Agreement attached to the

11.     In summary,[12] the Settlement Agreement provides that Southern shall have an allowed Class 3 claim against Old Mirant in the aggregate, fixed, liquidated amount of $8,552,283.53, which amount includes all interest owed under the Plan (the "Southern Class 3 Claim").[13]  The Settlement Agreement further provides that the Southern Class 3 Claim shall be allowed in full and shall be treated and satisfied on the terms and conditions set forth in the Plan.[14]

12.     On July 22, 2010, the Debtors filed a *Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 for an Order Approving the Settlement Agreement by and among Mirant Corporation, The Southern Company, and Southern Company Services, Inc.* (the "9019 Motion") [Bankruptcy Case, Docket No. 16080].[15]

13.     On August 30, 2010, the bankruptcy court entered an *Order Granting Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 for an Order Approving the Settlement Agreement by and among Mirant Corporation, The Southern Company, and Southern Company Services, Inc.* (the "Order Approving Settlement") [Bankruptcy Case, Docket No. 16090].[16]  In addition to granting the 9019 Motion in its entirety, the Order Approving Settlement also authorizes and directs Mirant to take all steps necessary to consummate and perform the terms of the Settlement Agreement.  The Order Approving Settlement became final and non-appealable on September 13, 2010.

---

Wilson Affidavit as **Exhibit 1)**.

[11] See App. p. 8 (Wilson Affidavit, ¶7); see also, App. p. 32 (Settlement Agreement, p. A-9).

[12] This summarization is qualified in its entirety by the terms of the Settlement Agreement attached to the Wilson Affidavit.

[13] See App. p. 8 (Wilson Affidavit, ¶ 8); see App. pp. 13, 15, 16 (Settlement Agreement, ¶¶ 1(k), 1(oo), and 2).

[14] See App. p. 8 (Wilson Affidavit, ¶ 9); see App. p. 16 (Settlement Agreement, ¶ 2).

[15] A certified copy of the 9019 Motion is included in the Appendix at pp. 35-76.

[16] A certified copy of the Order Approving Settlement is included in the Appendix at pp. 77-79.

14.     Section 11.4 of the Plan provides that "[w]hen a claim that is not an Allowed Claim as of the Effective Date … becomes an Allowed Claim (regardless of when) the holder of such Allowed Claim shall thereupon become entitled to receive the Plan Distributions in respect of such Claim the same as though such Claim had been an Allowed Claim on the Effective Date."[17]

15.     Consequently, as a result of the Settlement Agreement and the Order Approving Settlement, Southern became the holder of an allowed Class 3 claim against Old Mirant in the amount of $8,552,283.53 entitled to treatment and satisfaction in accordance with the terms and conditions set forth in the Plan.  The Southern Class 3 Claim is one of the claims which Defendants allege was "paid in full" under the Plan, thereby defeating Plaintiff's standing to bring this avoidance action.

16.     A distribution of 375,168 shares of Mirant stock was made to Southern on October 5, 2010 on account of Southern's $8,552,283.53 allowed Class 3 claim against Old Mirant.[18]  In accordance with section 11.4 of the Plan, this amount represents the total number of shares of Mirant stock that Southern would have received if its claim had been allowed on the Effective Date.[19]  Southern also received a cash distribution in the amount of $68,939 on account of its allowed Class 3 claim.[20]

---

[17] See Plan, § 11.4 (App. p. 171).  A copy of Mirant's Plan is attached to the Confirmation Order [Main Bankruptcy Case, Docket No. 12569].  For the Court's convenience, however, a certified copy of the Confirmation Order and attached Plan are included in the Appendix at pp. 80-295.

[18] See App. p. 10 (Wilson Affidavit, ¶ 15).

[19] Prior to the settlement with Southern, two stock distributions had been made to holders of allowed Class 3 claims against Old Mirant.  These distributions occurred on or about January 3, 2006 and August 21, 2007 (the "Distribution Dates").  The number of shares distributed to Southern represents the total number of shares of Mirant stock that Southern would have received on the Distribution Dates if its claim had been allowed on the Effective Date.  See App. 10 (Wilson Affidavit, ¶ 15).

[20] Prior to the instant settlement with Southern, a cash distribution had been made to creditors on or about September 14, 2009.  See App. pp. 9-10 (Wilson Affidavit, ¶ 14).  The distribution of $68,939 represents the pro-rata amount Southern was entitled to receive based on the amount of its allowed claim.

17. On the distribution date, October 5, 2010, Mirant's stock closed at $10.04 per share. Thus, Southern received 375,168 shares of stock having a value of approximately $3,766,682.72. This amount, plus the $68,939 cash distribution, results in a total value of the distribution to Southern of $3,835,625.72, which is less than half of the amount of its allowed approximately $8.5 million claim.

**C.    The Timing of the Southern Settlement and the Distribution of Stock after the Briefing Deadline Necessitates the Filing of a Supplement to Plaintiff's Briefs.**

18. In its Proposed Findings, the bankruptcy court concluded on page 18 that "the record is unclear that [Old Mirant's] creditors have been paid in full."[21] The Proposed Findings also note on page 19 that "According to Article XI of the plan, creditors were to receive plan distributions on the effective date or when their claims became Allowed Claims … [s]o it is also possible that some creditors received less than payment in full based upon Mirant's stock price as of their respective distribution dates."[22]

19. MCAR addressed the bankruptcy court's conclusions that the record did not appear to reflect that all creditors had been paid in full in its Primary Brief and Response Brief (collectively, the "Briefs"). Specifically, MCAR argued that all creditors had not been paid in full because certain creditors that received allowed claims after the Effective Date, when Mirant's stock price had fallen, did not receive payment in full on account of their allowed claims.[23] MCAR further argued that a disputed claim of nearly $50 million filed by Southern remained unresolved as of the filing of MCAR's Briefs and that, should Southern's claim subsequently be allowed, Southern would likely receive stock worth only approximately 50% of the amount of any allowed claim based on the fact that Mirant's stock,

---

[21] See Proposed Findings, p. 18.

[22] See Proposed Findings, p. 19.

[23] See Primary Brief, ¶¶59 and 61; see Response Brief, ¶ 18.

6

at that time, was trading in the range of $11-12 per share.[24]  This disputed claim is among the claims included in the Southern Class 3 Claim allowed pursuant to the Settlement Agreement.

20.     At the time of the filing of MCAR's Briefs, however, the nearly $49 million claim filed by Southern remained outstanding and unresolved.  As such, this claim was among the claims which Judge Nelms noted on page 18 of the Proposed Findings might receive less than full payment.

21.     Following the filing of MCAR's Briefs, Mirant and Southern entered into the Settlement Agreement described above which resulted in the allowance of an $8,552,283.53 Class 3 claim against Mirant in favor of Southern.[25]  Also following the filing of MCAR's Briefs, in accordance with section 11.4 of Mirant's Plan, a distribution of 375,168 shares of Mirant stock, and a distribution of $68,939 in cash, was made to Southern on October 5, 2010.[26]  On October 5, 2010, Mirant's stock closed at $10.04 per share.  Thus, in addition to $68,939 in cash, Southern received stock worth only $3,766,686.72 on account of its allowed $8.5 million claim.  Consequently, the total value of the distribution of Southern, $3,835,625.72, is worth less than half of the dollar amount of its allowed claim.  This evidences, as predicted by Judge Nelms, that all of Mirant's creditors were not paid in full.

22.     MCAR respectfully requests leave to file the Supplement included in MCAR's Appendix at pages 1-34 in order to update the references in its Briefs to the formerly outstanding approximately $49 million claim held by Southern to reflect the fact that (a) Southern actually received an allowed claim against Mirant in August 2010, (b) Southern received a small cash distribution and a stock distribution on account of such claim in

---

[24] See Primary Brief, ¶¶ 59, 60, 62, and 64; see Response Brief, ¶ 18.

[25] See App. p. 9 (Wilson Affidavit, ¶ 12).

[26] See App. p. 10 (Wilson Affidavit, ¶ 15).

October 2010, and (c) based on the price of the stock on the date it was distributed to Southern, the amount of the total distribution to Southern was not equal to, and in fact was less than half of, the dollar amount of Southern's allowed claim.  As reflected in the proposed Supplement (App. pp. 1-4), MCAR seeks to supplement only those paragraphs of its Briefs which address Southern's formerly disputed and outstanding claim.  In addition, the proposed Supplement cites no authorities which were not already cited in the original Briefs.

**D.   *Good Cause Exists Justifying the Filing of the Attached Amendment and Supplement.***

23.   On April 22, 2010, the bankruptcy court entered an Order Applying Procedures of Bankruptcy Rule 9033 to Commerzbank's Motion to Dismiss and Motion for Summary Judgment [Adversary Docket No. 264].  Bankruptcy Rule 9033 provides for only the filing of objections to the Proposed Findings and a response to the other party's objections.[27]

24.   Bankruptcy Rule 9033(b) does not contain any provision allowing a party to supplement its briefs or the record based on facts occurring after the briefing deadline. Bankruptcy Rule 9033(d), however, provides:

> The district judge shall make a de novo review upon the record or, ***after additional evidence,*** of any portion of the bankruptcy judge's findings or conclusions of law to which specific written objection has been made in accordance with this rule.  The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.[28]

Consequently, Bankruptcy Rule 9033(d) clearly provides that the Court has authority to receive additional evidence in addition to the record prepared by the bankruptcy court in connection with the Proposed Findings.

---

[27] See Fed. R. Bankr. P. 9033(b).

[28] See Fed. R. Bankr. P. 9033(d) (emphasis added).

25.     Moreover, the Fifth Circuit has repeatedly held that Rule 15(a) evinces a liberal amendment policy.  *See, e.g., Lowrey v. Texas A & M University* System, 117 F.3d 242, 245 (5th Cir. 1997)("Rule 15(a) expresses a strong presumption in favor of liberal pleading."); *Dussouy v. Gulf Coast Investment Corp.,* 660 F.2d 594, 597-98 (5th Cir. 1981)("The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits …").  Further, leave to amend should not be denied unless the Court finds a "substantial reason" to do so. *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir.1998).  A substantial reason exists where the proposed amendment: (1) causes undue delay; (2) prejudices the non-movant; (3) is motivated by bad faith or dilatory motives; (4) is futile; and/or (5) should have been resolved by prior attempts to amend.  *Id.*

26.     Here, although MCAR seeks to supplement its briefing in connection with the bankruptcy court's Proposed Findings, rather than amend a pleading under Rule 7(a), the same general principles should be applied.  MCAR seeks to supplement its Briefs in order to bring new facts to the Court's attention, which are directly relevant to the Court's consideration of the Proposed Findings, to help facilitate the Court's determination on the merits.  Further, there is no substantial reason for the denial of this motion.  Allowing MCAR to file a limited supplement to its Briefs to update its prior allegations related to the existence of an outstanding claim to Southern would not cause undue delay or prejudice Defendants.  Further, the fact that Southern actually received stock worth less than half of the amount of its allowed claim could not have been addressed in MCAR's prior Briefs as the allowance of the claim and stock distribution did not occur until after MCAR filed its Briefs.  Finally, the proposed Supplement is not motivated by bad faith or dilatory motives.  Instead, it is motivated by MCAR's desire to update the record so that the Court will be fully aware of all relevant facts related to the distributions of stock to Mirant's creditors when conducting its *de novo* review of Defendant's argument that MCAR

9

lacks standing to pursue the instant avoidance claims because all of Mirant's creditors were allegedly paid in full.

27.    Consequently, MCAR respectfully requests that the Court grant it leave to file the attached Supplement in order to update its prior briefing and the record to reflect that Southern received an allowed Class 3 claim against Mirant after the filing of the Proposed Findings and the parties' respective briefs related to same.

28.    MCAR does not seek to re-brief any of the issues previously presented to the Court.  Instead, the proposed Supplement seeks only to update the record and MCAR's Briefs to reflect the fact that (a) Southern actually received an allowed claim against Mirant in August 2010, (b) Southern therefore received a distribution of cash and stock on account of such claim in October 2010, (c) based on the price of the stock on the date it was distributed, the total distribution to Southern was not equal to, and in fact was less than half of, the dollar amount of Southern's allowed claim, and (d) all of Mirant's creditors were not paid in full.

29.    The fact that Southern received an allowed claim and a distribution of stock and cash after the filing of the Proposed Findings and the parties' respective briefs is directly relevant to the Court's review of the bankruptcy court's proposed conclusions that (a) the record in this case does not reflect that all creditors have been paid in full,[29] and (b) some creditors possibly received less than payment in full based upon Mirant's stock price as of their respective distribution dates.[30]  Consequently, good cause exists for the Court to allow MCAR to file the attached Supplement so that it may receive evidence in connection with the allowance of the Southern claim against Mirant and the subsequent distribution of stock to Southern on account of same.

---

[29] See Proposed Findings, p. 18.

[30] See Proposed Findings, p. 19.

10

## II.
## REQUEST FOR JUDICIAL NOTICE

30.     Federal Rule of Evidence 201 provides that judicial notice may be taken at any stage of the proceeding. *Gov't. of Canal Zone v. Burjan*, 596 F.2d 690, 694 (5th Cir. 1979) ("Rule 201(f) of the Federal Rules of Evidence provides that 'judicial notice may be taken at any stage of the proceeding,' and the Advisory Committee's note to this provision explains that it permits the taking of judicial notice at any stage, 'whether in the trial court or on appeal.'"); *see also Flores v. GMAC Mortg.*, No. 2:09-cv-01216, 2010 U.S. Dist. LEXIS 20623, at *4 (E.D. Cal. Feb. 10, 2010) ("The Court has reviewed the Bankruptcy Docket . . . and takes judicial notice of these documents under Federal Rule of Evidence 201 since they are matters of public record."); *Bridgewater v. Northrop Grumman Ship Sys.*, 2007 U.S. Dist. LEXIS 87926, *9 (S.D. Miss. Nov. 29, 2007) ("the Court may, and does, take judicial notice of the facts contained in the Bankruptcy Court's records pursuant to Federal Rule of Evidence 201(b)(2).").

31.     MCAR hereby requests that the Court take judicial notice of the 9019 Motion filed in Mirant's bankruptcy case [Bankruptcy Case, Docket No. 16080], a certified copy of which is included in MCAR's Appendix at pages 35-76**.**

32.     MCAR hereby further requests that the Court take judicial notice of the Order Approving Settlement filed in Mirant's bankruptcy case [Bankruptcy Case, Docket No. 16090], a certified copy of which is included in MCAR's Appendix at pages 77-79.

33.     In addition, Mirant's stock trades on the New York Stock Exchange (NYSE) under the symbol "MIR".  Pursuant to Fed. R. Evid. 201(b), the Court may take judicial notice of the stock prices as reported on the New York Stock Exchange.[31]

---

[31] Pursuant to Federal Rule of Evidence 201(b), the Court may take judicial notice of stock prices.  *See, e.g., Hausberg v. CompUSA*, No. 3:940CV-1151-H, 1995 U.S. Dist. LEXIS 20333, at *31 n.14 (N.D. Tex. Oct. 30, 1995) ("Judicial notice of stock prices is proper pursuant to rule 201(f) of the Federal Rules of Evidence. *FMC Corp v. Boesky*, 727 F.Supp. 1182, 1196 n. 17 (N.D. Ill. 1989), *aff'd sub nom*, *In re Ivan Boesky Sec. Litig.*, 36 F.3d 255 (2d

11

34.     Consequently, MCAR hereby requests that the Court take judicial notice of the fact that on October 5, 2010, (i.e., the date of the distribution of 375,168 shares of stock to Southern on account of its $8,552,283.53 claim), Mirant's stock closed at a price of $10.04 per share.

### III.
### MOTION TO SUPPLEMENT RECORD

35.     Finally, MCAR respectfully requests that it be granted leave to supplement the record in this case related to this Court's *de novo* review of the Proposed Findings with (a) the present Motions, including the attachments thereto, (b) any orders entered in connection with the present motions, and (c) the attached Supplement, if and when filed, including the attachments thereto.

WHEREFORE the Plaintiff respectfully prays that the Court (i) grant Plaintiff leave to file the Supplement included in MCAR's Appendix at pages 1-34, (ii) take judicial notice of the matters set forth above, (iii) grant Plaintiff leave to supplement the record as set forth above, and (iv) grant Plaintiff all such other and further relief to which it may be entitled.

Dated:  October 19, 2010.                    Respectfully Submitted,

                                             FORSHEY & PROSTOK LLP
                                             By:   /s/ J. Robert Forshey
                                             J. Robert Forshey
                                             State Bar No. 07264200
                                             Jeff P. Prostok
                                             State Bar No. 16352500
                                             Suzanne K. Rosen
                                             State Bar No. 00798518
                                             777 Main Street, Suite 1290
                                             Fort Worth, TX 76102
                                             Telephone:  (817) 877-8855
                                             Facsimile:  (817) 877-4151
                                             ATTORNEYS FOR PLAINTIFF
                                             MC ASSET RECOVERY, LLC

---

Cir. 1994).").

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on the parties listed below via email and via Federal Express, Overnight Delivery, on the 19th day of October, 2010.

J. Mark Chevallier, Esq.
MCGUIRE, CRADDOCK & STROTHER, P.C.
2501 North Harwood, Suite 1800
Dallas, Texas 75201
Email: mchevallier@mcslaw.com

Hugh M. McDonald, Esq.
Keith Nusbaum
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas
New York, New York 10020
Email:  hmcdonald@sonnenschein.com
          knusbaum@sonnenschein.com


                                                        /s/ Suzanne K. Rosen_____
                                                        Suzanne K. Rosen


L:\JPROSTOK\MCAR-Commerzbank #1829CB\Dist Court 406cv00013 - MCAR v Commerzbank\Pleadings\Brief - Mtn for Leave to Fle Supplement Based on New Facts 10 18 10.doc

13