J. Mark Chevallier, Esq.
State Bar No. 04189170
MCGUIRE, CRADDOCK & STROTHER, P.C.
2501 N. Harwood, Suite 1800
Dallas, Texas 75201
Telephone: (214) 954-6800
Facsimile: (214) 954-6850
Email: mchevallier@mcslaw.com

Hugh M. McDonald, Esq.
Keith C. Nusbaum, Esq.
SNR DENTON US LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: Hugh.Mcdonald@snrdenton.com
Email: Keith.Nusbaum@snrdenton.com

Co-counsel for Commerzbank AG, ABN AMRO Inc.,
Australia and New Zealand Banking Group Limited,
Barclays Bank PLC, BNP Paribas, Credit Lyonnais, Danske
Bank A/S, ING Bank, Intesa San Paolo (formerly known as Banca Intesa),
and The Royal Bank of Scotland PLC

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| MIRANT CORPORATION, | |
| v. | ACTION NO. 4:06-CV-013-Y |
| | (1-3-5 DOCKET LAW CLERK) |
| COMMERZBANK AG, *et al.* | |

**Memorandum of Law in Opposition to Plaintiff MC Asset
Recovery LLC's Motion for Leave to File Supplement,
<u>Request for Judicial Notice and Motion to Supplement the Record</u>**

The Defendants, Lenders,[1] hereby submit this memorandum of law in opposition to the motion of Plaintiff MC Asset Recovery, LLC ("MCAR") for leave to file supplement, request for judicial notice and supplement of the record (the "Motion").

## PRELIMINARY STATEMENT

MCAR seeks to file what it refers to as a "short" supplement to its already voluminous filings in order to bring to the Court's attention a "settlement" that was already referenced in their pleadings in order to demonstrate that there is a creditor (albeit the former parent to Mirant) that was not paid in full. In fact, the settlement is merely the result of Mirant manufacturing a situation whereby the Southern Company and Southern Company Services, Inc. (together "Southern") negotiated to accept a Class 3 claim knowing it would only receive stock valued at approximately fifty percent of its submitted claim. By allowing such a claim, neither Mirant nor MCAR can assert that creditors were not paid in full. This contrived scenario, which is now the basis for MCAR's changed circumstances, should be given no credence by the Court, and as such, the Court should not permit MCAR to file its irrelevant supplement.

## ARGUMENT

In the Motion, MCAR (1) requests leave to file a Supplement to its previously filed Brief in Support of Objections to Proposed Findings of Fact and Conclusions of Law and Plaintiff's Brief in Response to Defendants' Objections to Proposed Findings of Fact and Conclusions of Law; (2) requests judicial notice of certain irrelevant information; and (3) moves to supplement the record. Lenders will address each point respectively.

---

[1] The Lenders, the defendants in this action, are as follows: Commerzbank AG, ABN AMRO Inc., Australia and New Zealand Banking Group Limited, Barclays Bank PLC, BNP Paribas, Credit Lyonnais, Danske Bank, ING Bank, Intesa San Paolo (formerly known as Banca Intesa), and the Royal Bank of Scotland PLC.

    **1.**    **Motion for Leave to Supplement**

    *(a)*    *The Supplemental Information is Irrelevant to the Court's Determination*

MCAR and Mirant have manufactured a scenario where a Class 3 claim was not paid in full using a settlement with Mirant's former parent company. The Court should not permit MCAR to present this contrived settlement as evidence that Mirant's unsecured creditors were not paid in full.

According to MCAR, on July 7, 2010, just days after MCAR filed its response to Lenders' Objections to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law, Mirant and Southern entered into a settlement, resolving substantially all disputes between Mirant and Southern. *See* Motion ¶10. MCAR conveniently fails to disclose that the Southern Company was not just another creditor, but was Mirant's former parent company. In late 2000, the Southern Company decided to spin-off the power generation aspect of its business which resulted in the formation of Mirant. Indeed, the very contract with General Electric that was financed by the Lenders was executed while Mirant was still a subsidiary of Southern. Mirant operated independently for less than 3 years until July 14, 2003 when it sought bankruptcy protection. As a result of the bankruptcy, Southern and Mirant made numerous claims and accusations against each other. Southern had provided millions of dollars in start-up capital to Mirant and sought to recover those funds in the bankruptcy proceeding. Mirant asserted claims that Southern under-capitalized Mirant after the spin-off which Mirant claimed was a primary factor in Mirant's eventual decision to seek bankruptcy protection. Some of these claims resulted in settlements, such as last year's settlement of the lawsuit prosecuted by MCAR against Southern in the Northern District of Georgia, while many of Southern's claims remained unresolved until the July 7 settlement MCAR references above.

In April 2010, Mirant announced that it would be merging with RRI Energy to form a new corporation, GenOn Energy.  *See* Mirant 8-K filed April 12, 2010.  As part of this merger, Mirant attempted to settle pending and potential claims, including those claims by and against Southern surrounding the creation of Mirant.[2]  During Mirant's bankruptcy proceeding, Southern filed approximately 340 proofs of claim, for more than $80 million, against Mirant and related entities, including a proof of claim, no. 8285, in the amount of $48,983,611.79.  *See* Motion ¶9, n. 8.

As part of this settlement agreement, Southern agreed to forfeit most of its numerous claims against Mirant and related entities while Mirant gave up claims that it had against Southern.  Southern and Mirant agreed to allow Southern's claim no. 8285, which was a Class 3 claim, in the reduced amount of $8,552,283.53.  *See* Southern 9019 Motion (Bankr. Dkt. No. 16080).  Based on the arrangement, Southern knew that it would receive approximately 1 share of Mirant stock for each $22.80 of its claim, or 375,168 shares of Mirant stock.  At its present value of $10.04, that results in a recovery of approximately $3,766,686.  Southern also received a cash distribution of $68,939 for its Class 3 claim, which was essentially a return of some of the cash Southern paid to resolve its litigations with MCAR.  MCAR relies on this amount as evidence that Southern was not paid in full.  *See* Motion ¶22.

This manufactured settlement is not evidence that creditors were not paid in full as MCAR suggests.  Southern knew what its recovery would be when it made the decision to settle its claims.  It chose to forfeit its other claims and take what it knew to be a partial recovery on its Class 3 claim in return for releases by Mirant.  As part of the settlement, Mirant used Southern's

---

[2] Coincidentally, Mirant indicates in its Agreement and Plan of Merger, filed with the SEC on April 12, 2010, that "there are no actions, suits, inquiries, investigations or proceedings pending (or, to the knowledge of Parent, threatened) against or affecting Parent or any of its Subsidiaries, or any of their respective properties at law or in equity . . . ."  Section 4.11(b).  Mirant did not disclose in its Agreement and Plan of Merger Southern's claims against Mirant.  Nor did it disclose Lenders' potential 502(h) claims.

claim to create a creditor that would not be paid in full. This unpaid creditor status was purely a manufactured result.

MCAR, throughout its objections to the Bankruptcy Court's proposed findings, relied on the premise that creditors were not paid in full. *See* MCAR's Objections (Adv. P. Dkt. No. 279). Despite these allegation, Lenders have clearly demonstrated that, in fact, all of the creditors were paid in full as of the effective date of Mirant's Plan of Reorganization (the "Plan") when they were issued shares of New Mirant stock. *See* Lenders' Response (Adv. P. Dkt. No. 302) at 13-15 (discussing how creditors were paid in full through stock distribution on the effective date).[3] Those creditors that received distributions after the effective date of Mirant's Plan either received stock distributions when the price was higher than when it was offered on the effective date or they received cash in the full amount of their claims. *See* Lender's Response at 15-16. As demonstrated in the Lenders' Response, MCAR's attempt to have a floating determination date for the value of Plan distributions is flawed. Moreover, the claims that MCAR pointed to in its objections were actually paid in full. Faced with this revelation, MCAR needed to manufacture a creditor that Mirant would have paid less than the full amount of its claim. This last minute settlement is wholly irrelevant to the issues before the Court. As pointed out by MCAR's responses to Lenders' objections, Southern's $49 million claim was still outstanding when Lenders' briefed their objections and responses. *See* Motion ¶5. After Lenders definitely proved that every creditor was paid in full, Mirant negotiated a settlement to create a situation where a creditor of a Class 3 claim would submit a claim and only recover a percentage of that claim.

---

[3] The Lenders' Response is *Defendants' Response to MC Asset Recovery's Objections to Proposed Findings of Fact and Conclusions of Law with Respect to Defendants' Motion to Dismiss Plaintiff's First Mended Complaint and Brief in Support* currently part of the record before the Court.

If the Court permits MCAR to supplement and add evidence regarding Southern's claim and distribution, Lenders request that, in order to investigate the circumstances of this contrived settlement, they be permitted to take limited discovery as to the terms and negotiation of the settlement agreement.

### (b)    The Supplement was Previously Addressed in MCAR's Filings

MCAR previously addressed the issues surrounding Southern's claim in its response to Lenders' objections, where it identified that Southern had filed a claim and that it was likely Southern would receive less than the full amount of its claim. In its current brief, MCAR concedes that it previously "addressed the fact that a large outstanding claim against Mirant existed as of the time of the filing of its objections to the Proposed Findings." Accordingly, the information provided in MCAR's supplement is redundant to that already provided in its voluminous submissions to the Court.

### (c)    MCAR's Reliance on Bankruptcy Rule 9033(d) and Civil Rule 15 Is Misplaced

In support of its argument that it should be permitted to supplement its Objections and Responses filed months earlier, MCAR relies on Bankruptcy Rule 9033(d) and Civil Rule 17.

Bankruptcy Rule 9033(d) provides that when reviewing a bankruptcy court's proposed findings of fact and conclusions of law in non-core proceedings, the "district judge may accept, reject or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." Despite Bankruptcy Rule 9033 providing no means for MCAR to supplement its objections and responses filed several months ago, MCAR attempts to use the Court's ability to seek additional evidence if it deems it necessary as a basis for MCAR to file its irrelevant supplement. The Court should only accept additional evidence if it deems such evidence necessary to decide the issues before the Court.

Here, the Court has not requested nor, the Lenders respectfully submit, does it need the information MCAR is attempting to provide. As such, MCAR's reliance on Bankruptcy Rule 9033 is misplaced.

MCAR also attempts to rely on Civil Rule 15 which permits the Court to allow a party to amend a pleading, *i.e.* a complaint. Civil Rule 15 does not address amendments to motions, briefs, or objections. Again, MCAR's reliance is misplaced, and the Court should give no credence to the Civil Rule 15 analysis.

Even if the Court were to apply Civil Rule 15 to the issue of whether a party should be permitted to supplement objections to bankruptcy objections and responses, MCAR still fails to satisfy the requirements established in the Fifth Circuit. As identified by MCAR, the Court should not permit amendment when it: (1) causes undue delay; (2) prejudices the non-movant; (3) is motivated by bad faith or dilatory motives; (4) is futile; and/or (5) should have been resolved by prior attempts to amend. *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998). As discussed previously, the supplement is irrelevant to the issues before the Court, and thus amendment or supplement is futile. Allowing such a "supplement" begs the question of whether MCAR will have to supplement its pleading each time a claim is allowed. Furthermore, MCAR previously included information in its objections and responses about the claims by Southern. Not only should this supplement have been resolved by prior attempts to amend, but MCAR had already included the substance of the "new" information in its previous filings. Hence, the issue was actually addressed, and thus resolved, prior to the proposed submission of this "supplement."

### 2. Request for Judicial Notice

MCAR requests the Court take judicial notice of two filings in Mirant's bankruptcy proceeding and Mirant's stock price on the New York Stock Exchange pursuant to Fed. R. Evid. 201. As explained in detail previously, the 9019 Motion (Bankr. Dkt. No. 16080), the Order Approving Settlement (Bankr. Dkt. No. 16090), and Mirant's stock price are irrelevant to any determination of Lender's Motion to Dismiss. Relevance, however, is not a factor to consider when a party requests the Court to take judicial notice, and the Court may take judicial notice of the information. Indeed, the Court is free to take judicial notice of Mirant's stock price on every date from the date of issue through the date hereof. Accordingly, Lenders do not oppose the Court taking judicial notice as requested by MCAR but instead highlight the lack of relevance these stock prices have to the issues before the Court.

### 3. Motion to Supplement Record

With respect to MCAR's Motion to Supplement the Record, Section III of its brief, Lenders are unsure how this request differs from that presented in Section I. Both request the same relief, leave to supplement the record. Accordingly, Lenders oppose this relief for the previously stated reasons and reserve the right to respond to the substance of MCAR's Supplement until such time as the Court permits MCAR to file its Supplement. In addition, because MCAR filed an affidavit in support of its position and requests that such affidavit become part of the record, in the event that the Court grants the Motion, Lenders request permission to take appropriate discovery in response to the Supplement, including the deposition of Jay Wilson, who submitted an affidavit as part of MCAR's Supplement.

## CONCLUSION

For the foregoing reasons, Lenders request that the Court deny MCAR's Motion.

Dated: New York, New York
October 27, 2010

    Respectfully submitted,

    By:  <u>s/J. Mark Chevallier</u>
    J. Mark Chevallier
    MCGUIRE, CRADDOCK & STROTHER, P.C
    State Bar No. 04189170
    2501 North Harwood, Suite 1800
    Dallas, Texas  75201
    Telephone: (214) 954-6800
    Facsimile: (214) 954-6850

    Hugh M. McDonald
    Keith C. Nusbaum
    SNR DENTON US LLP
    1221 Avenue of the Americas
    New York, New York 10020
    Tel:   (212) 768-6700
    Fax:   (212) 768-6800
    Hugh.Mcdonald@snrdenton.com
    Keith.Nusbaum@snrdenton.com

*Co-counsel for Commerzbank AG, ABN AMRO Inc., Australia and New Zealand Banking Group Limited, Barclays Bank PLC, BNP Paribas, Credit Lyonnais, Danske Bank A/S, ING Bank, Intesa San Paolo (formerly known as Banca Intesa), and The Royal Bank of Scotland PLC*

- 9 -

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 27, 2010, I served the Memorandum of Law in Opposition to Plaintiff MC Asset Recovery LLC's Motion for Leave to File Supplement, Request for Judicial Notice and Motion to Supplement the Record through Notice of Electronic Filing on all counsel of record.

Dated:  New York, New York
         October 27, 2010

                                      By:   s/J. Mark Chevallier
                                              J. Mark Chevallier